BENNIE GRAY DANIELS v. STATE OF INDIANA.

[No. 475S106. Filed May 14, 1976.]

*John G. Bunner,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Joseph J. Reiswerg,* Deputy Attorney General, for appellee.

HUNTER, J.—Defendant-appellant, Bennie Gray Daniels, appeals from his conviction of first degree murder. Appellant entered a plea of not guilty and moved for a change of venue from the county. Appellant entered a special plea of insanity on November 4, 1974. Upon his conviction appellant was sentenced to life imprisonment at the Indiana State Prison.

On appeal three contentions of error are made by appellant:

1. The verdict of the jury was not supported by sufficient evidence;
2. The trial court erred in overruling appellant's motion for change of venue from the county;
3. The trial court erred in not removing the cause from the jury.

I

The first issue presented is whether the verdict is supported by sufficient evidence. Appellant contends that the state failed to carry its burden of proof concerning appellant's sanity.

Once an accused has raised the issue of his sanity, the burden is upon the state to prove that the accused was sane beyond a reasonable doubt. *Young* v. *State,* (1972) 258 Ind. 246, 280 N.E.2d 595; *Flowers* v. *State,* (1956) 236 Ind. 151, 139 N.E.2d 185. The issue of one's sanity is to be resolved by the trier of fact. *Sotelo* v. *State,* (1976) 264 Ind. 298, 342 N.E.2d 844; *Johnson* v. *State,* (1970) 255 Ind. 324, 264 N.E.2d 57. When reviewing the sufficiency of the evidence to support a determination by the trier of fact, we consider only that evidence which is most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. When there is substantial evidence of probative value to support the jury's verdict, the

conviction will not be set aside. *Henderson* v. *State*, (1976) 264 Ind. 334, 343 N.E.2d 776; *Sotelo* v. *State, supra.*

The evidence in support of appellant's sanity is as follows: Two court-appointed medical experts testified that in their opinion, while appellant did exhibit signs of inadequate personality development, he did not suffer from any mental illness or disease. One of the experts testified that there was a "remote possibility" that the appellant could not control his actions. In addition, the same expert was of the opinion that Daniels was able to comprehend the wrongfulness of his conduct. Furthermore, the arresting officers testified that the appellant appeared to them to be very calm and seemingly unperturbed at the time of his arrest shortly after the murder had occurred.

Appellant's argument focuses upon the state's failure to call any witnesses of its own during the hearing on appellant's sanity. In this instance, the court-appointed experts sufficiently presented evidence from which the jury could determine that appellant was sane. When resolving the issue of one's sanity, the trier of fact has a right to consider all of the evidence relevant to that issue regardless of who presented it. *Young* v. *State, supra.* Therefore, it became unnecessary for the state to present its own witnesses when there existed sufficient evidence of appellant's sanity from which the trier of fact could make its determination.

## II

The second allegation of error made by appellant is that the trial court erred in overruling his motion for change of venue from Vanderburgh County. Appellant argues that he was denied a fair trial due to the pre-trial publicity by the Evansville news media. In support of his argument appellant directs this Court's attention to *Irvin* v. *Dowd*, (1961) 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, and *Sheppard* v. *Maxwell*, (1966) 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600.

The right to a change of venue from the county in criminal

cases not punishable by death is committed to the discretion of the trial court. *Burton* v. *State,* (1973) 260 Ind. 94, 292 N.E.2d 790; *Brown* v. *State,* (1969) 252 Ind. 161, 247 N.E.2d 76; *Baker* v. *State,* (1963) 245 Ind. 129, 195 N.E.2d 91; Ind. R. Crim. P. 12.[1] It is the burden of the defendant to produce evidence of community bias sufficient to convince the trial judge that he cannot obtain a fair trial in that particular county. *Dickens* v. *State,* (1973) 260 Ind. 284, 295 N.E.2d 613. The record of the hearing on appellant's motion consists of several newspaper articles and copy from several radio and television reports of the incident.

The appellant has failed to demonstrate that the jury was prejudiced against him or that the community exhibited a "pattern of deep and bitter prejudice" as was found in the *Irvin* case or that he faced a "huge wave of passion" as evinced by the record in the *Sheppard* decision. For example, at the *Irvin* trial, two-thirds of the jury felt the accused was guilty before trial. The news media sensationalized in its reporting of the case every fact known about the defendant. After examining the record, it cannot be said that the appellant sufficiently established community bias or prejudice to require reversal of the trial court's decision.

### III

Appellant's third and final allegation of error is that the trial court erred in overruling his motion to remove the cause from the jury. At some time during the proceedings, the mother of the victim made threatening comments to the wife of one of the jurors. We noted in *Duke* v. *State,* (1968) 249 Ind. 466, 233 N.E.2d 159, that the decision to withdraw a case from the jury rests within the discretion of the trial judge. Although established in the context of different facts, the procedure set forth in *Lindsey* v.

---

1. Ind. R. Crim. P. 12 states in pertinent part:
"Upon the filing of a properly verified application, a change of venue from the county shall be granted in all cases punishable by death and *may be granted in all other cases when in the court's discretion cause for such change is shown to exist . . . .*" [Emphasis added.]

*State,* (1973) 260 Ind. 351, 358, 295 N.E.2d 819, 823, is deemed applicable to the case at bar:

> "Upon a suggestion of improper and prejudical publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror. If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collectively to determine who, if any, has been exposed. If there has been no exposure, the court should instruct upon the hazards of such exposure and the necessity for avoiding exposure to out-of-court comment concerning the case. If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof. After each juror is so interrogated, he should be individually admonished. After all exposed jurors have been interrogated and admonished, the jury should be assembled and collectively admonished, as in the case of a finding of 'no exposure.' If the imperiled party deems such action insufficient to remove the peril, he should move for a mistrial. Obviously, if at any stage the court believes the peril to be substantial and uncurable, it should declare a mistrial sua sponte. At all stages, the trial court must have discretion to make the determination, within the context of the particular circumstances; and a denial of a motion to interrogate the jury will be reversible error, only if we can say that there has been substantial peril. If the jury has been interrogated and admonished, as set forth above, the continuance of the trial, over the imperiled party's motion for a mistrial, will be reversible error only if it can be said, after giving the decision of the trial judge the benefit of all reasonable doubt, that the peril was such as to be uncurable by instruction."

When the threat was made known to the trial judge, he immediately interrogated each juror to determine if they had read or heard anything concerning the trial or had discussed the trial with anyone. Each juror, individually, answered in the negative. It is unclear from the testimony of the wife of the juror to what extent he had been informed of the exchange. When questioned, the wife of the juror responded in this way:

DAVID V. MILLER FOR STATE: "You haven't conveyed any of this to your husband?"

VONDA RUSSELL: "No, he got upset."

COURT: "Did you tell your husband these women talked to you?"

VONDA RUSSELL: "I didn't tell him who. I just said, 'women'."

COURT: "He suggested you talk to me?"

VONDA RUSSELL: "Yes."

It is physically impossible to isolate the jurors from all extraneous influences regarding a trial. Absent a showing of prejudice, it is not required that a cause be removed from the jury. *Irvin* v. *Dowd, supra; Harris* v. *State*, (1967) 249 Ind. 681, 231 N.E.2d 800. The trial judge determined that none of the jurors had suffered prejudicial exposure to extraneous influences that would warrant removing the cause from the jury. While further investigation into the extent of the male juror's knowledge of the incident and an admonishment not to discuss the matter with any of the other jurors would have been preferable, the actions taken by the trial court in this instance are not an abuse of its discretion and do not constitute reversible error.

For all of the foregoing reasons the judgment of the trial court is affirmed.

Givan, C.J., Arterburn, DeBruler and Prentice, JJ., concur.

NOTE.—Reported at 346 N.E.2d 566.